**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| LAWRENCE D. KELLY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:12-CV-29-PRC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Lawrence D. Kelly

on January 18, 2012, and Plaintiff's Opening Brief in Support of Reversing or Remanding the

Decision of the Commissioner [DE 24], filed by Plaintiff on October 12, 2012. Plaintiff requests

that the April 14, 2011 decision of the Administrative Law Judge denying his claims for disability

insurance benefits ("DIB") and supplemental security income ("SSI") be reversed or remanded for

further proceedings. On January 18, 2012, the Commissioner filed a response, and Plaintiff filed

a reply on March 1, 2013. For the following reasons, the Court denies the relief sought by Plaintiff

and affirms the ALJ's decision.

## PROCEDURAL BACKGROUND

On October 27, 2009, Plaintiff filed applications for DIB and SSI, alleging an onset date of

October 1, 2009. His applications were denied initially on March 10, 2010, and upon

reconsideration on May 17, 2010. On July 7, 2010, Plaintiff filed a timely request for hearing. The

hearing was held on April 1, 2011, in Gary, Indiana, before Administrative Law Judge ("ALJ") Curt

Marceille, by video teleconference. In appearance were Plaintiff, his attorney Matthew Casey, and

vocational expert ("VE") Randall Harding.  On April 14, 2011, the ALJ issued a decision finding

that Plaintiff was not disabled under the Social Security Act.  The ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.    The claimant has not engaged in substantial gainful activity since October 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairment: status-post hip fracture (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: claimant can never climb ladders or scaffolds or work at unprotected heights.  He can occasionally climb ramps and stairs, stoop, balance, kneel, crouch and crawl.  Additionally, the claimant is limited to using his right hand for occasional fine finger manipulation and frequent gross manipulation with no manipulative limitations on the left hand.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born [in 1983] and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 38-45.

On October 20, 2011, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A. Background

Plaintiff was born in 1983 and was 29 years old at his alleged onset. He stands 5'7", weighs approximately 190 pounds, and completed 11 years of school. His past relevant work was as an industrial cleaning field technician, which was heavy work. Plaintiff is insured through December 31, 2013 for DIB purposes.

## B. Medical Background

In 2005, Plaintiff was shot in the hand.

On October 1, 2009, his alleged onset date, Plaintiff was in a car accident, which resulted in the fracture and dislocation of his right hip. He was taken to the emergency room at Northlake Hospital and then was transferred to and treated at Methodist Hospital in Indianapolis. Plaintiff was discharged from Methodist on October 7, 2009, after undergoing hip fracture repair surgery. Plaintiff received follow-up treatment at Gandhi Medic Center, and on November 20, 2009, Dr. Linus Gandhi signed a form that Plaintiff was "temporarily unable to participate in any gainful employment." AR 380.

On February 8, 2010, Plaintiff underwent a consultative examination by a DDS selected doctor, Ikechukwu Emereuwaonu, a family medicine doctor, who found right knee tenderness and an iliac spine scar going down to his thigh. As for his gait, Dr. Emereuwaonu observed Plaintiff limping with his right leg off the ground and weightbearing on the left leg with an assistive device (crutches). Dr. Emereuwaonu noted Plaintiff was unable to tandem walk, walk on his toes or heels, squat, and hop; Plaintiff was also noted to have "severe" difficulty getting on and off the examination table. Plaintiff had normal grip strength but abnormal fine finger manipulation, including difficulty zipping, buttoning up, and picking up coins. Dr. Emereuwaonu's impression was that Plaintiff's musculoskeletal pain affects his functioning. On a range of motion chart, Dr. Emereuwaonu noted a limitation in: right knee flexion of 20 of 150 degrees; right hip abduction of 5 out of 20 degrees; right hip flexion to 10 out of 100 degrees; and right hip extension to 10 of 30 degrees possible.

On March 9, 2010, a non-examining, State agency reviewing doctor checked off boxes on a form indicating that he believed that Plaintiff could perform light work with occasional postural limitations of climbing, balancing, stooping, kneeling, crouching, and crawling. In support of the limitations, Dr. Brill listed the limitations identified by Dr. Emereuwaonu upon examination. Dr. Brill also noted the history of motor vehicle accident in October 2009 and the subsequent hip surgery and opined that Plaintiff's hip would be expected to improve within the next twelve months to the point where he would be expected to be able to return to light duties.

On May 11, 2010, state agency physician Dr. J.V. Corcoran affirmed Dr. Brill's opinion.

On May 3, 2010, Dr. Gandhi completed a physical residual functional capacity form, indicating that Plaintiff's pain and symptoms limit him to sitting one hour at a time, standing for twenty minutes at a time, and lifting 10 pounds occasionally. Additionally, he indicated Plaintiff needs a sit/stand option, unscheduled breaks every 45 minutes, a cane to engage in occasional standing and walking, and to elevate his legs half the day. Dr. Gandhi indicated a limitation to Plaintiff's right hand of use 50% of the work day for grasping, turning, and twisting objects and to Plaintiff's right hand of 10% of the work day for fine finger manipulation. Dr. Gandhi indicated that Plaintiff has good and bad days and would likely miss more than 4 days of work a month.

On May 5, 2010, Plaintiff underwent further hip x-rays, revealing fragments lateral to the acetabular region and greater tronchanter consistent with old trauma. The x-ray revealed fixation of the femoral head by 2 screws. No acute changes were seen.

On May 20, 2010, Plaintiff was seen due to leg pain and sharp pains in the chest.

Plaintiff received treatment and pain medication from Dr. Gandhi on September 7, 2010, January 4, 2011, and February 17, 2011. Medications prescribed to Plaintiff included Fentanyl, Tramadol, Ibuprofen 400mg, Carvedilol, Cyclobenzaprine, and Hydrocodone.

On February 1, 2011, Plaintiff was involved in a second motor vehicle accident during a snow storm. He presented to the emergency room on February 3, 2011, complaining of hip, lower back, and neck pain. C-spine, right hip, l-spine, sacral, and pelvis x-rays revealed no acute fractures or changes. The cervical spine x-ray revealed loss of normal cervical lordosis.

On February 17, 2011, Dr. Gandhi completed a second physical residual functional capacity form, noting that Plaintiff suffers from hypertension, right hip pain, and a gunshot wound to the hand. Dr. Gandhi indicated that Plaintiff's pain and symptoms interfere "constantly" with his attention and concentration needed to perform even simple work tasks. Dr. Gandhi opined that Plaintiff can walk a half block, sit 10 minutes at a time, stand 5 minutes at a time, sit about 4 hours in a day, and stand/walk less than 2 hours in an 8-hour work day. Additionally, he indicated that Plaintiff needs a sit/stand option, unscheduled breaks every 10 to 15 minutes, and a cane to engage in standing and walking. Dr. Gandhi limited Plaintiff to lifting of up to 10 pounds occasionally, 20 pounds rarely, and never more. Dr. Gandhi indicated Plaintiff could only use his right hand 50% of a work day for grasping, turning, and twisting objects and his right fingers 10% of a work day for fine finger manipulation. In conclusion, Dr. Gandhi noted Plaintiff has good and bad days, and would likely miss more than 4 days of work a month. In contrast with the prior physical RFC form, Dr. Gandhi did not indicate this time that Plaintiff's leg needed to be elevated during prolonged sitting.

Plaintiff underwent frequent physical therapy and treatment from February 4, 2011, through March 11, 2011.

### C. Plaintiff's Testimony

Plaintiff testified that he last worked in 2009. He was laid off and intended to go back to work but then was in the first car accident. He testified that he was rear ended into a tree. His second motor vehicle accident occurred during a snow storm.

Plaintiff had to change positions, including standing, during the hearing due to pain.

He indicated being able to lift 10 to 15 pounds with his left hand, but only 5 pounds with his right. In response to the ALJ's question about how long he can sit, Plaintiff responded that it depended on his position, indicating that sitting at an angle relieved pain but that sitting upright caused sharp pains in his leg and pelvis; he then indicated an ability to only sit 7 to 10 minutes in a position at one time before his leg goes to sleep.

Plaintiff did not have health insurance or income and relied on his mother and wife to pay his medical bills. He applied for disability in order to get medical care coverage. His medications help sometimes, but can cause sleepiness. He does not do much of anything during the day except "try to make it through the day," watching some television, doing his therapeutic exercises, and driving to get treatment. He testified that his leg pops out of socket 3 to 4 times a week, and he drives to visit his mother so he can have help if this occurs. Plaintiff uses a cane while walking to avoid having his leg pop, and sleeps in a recliner as well as elevates his legs when sitting, spending 18 to 20 hours a day in various reclined positions. He testified that he does not always require use of the cane.

Plaintiff is right-handed. He was shot in his right hand in 2005; as a result, he is limited in the use of his third, ring, and pinky fingers.

### D. Vocational Expert Testimony

VE Harding testified that Plaintiff's past work included work as an industrial cleaner (medium, SVP 2), fork truck operator (medium, SVP 3), and sand blaster (medium, SVP 2). All of the jobs required frequent if not constant reaching and handling. The ALJ then posed a hypothetical individual of Plaintiff's age, education, and work history limited to light work with occasional posturals, occasional fine finger manipulations on the right and frequent gross manipulation with the right hand, and no work around heights or climbing of ladders, ropes, or scaffolding. The VE indicated all of Plaintiff's past work would be eliminated but that other work existed in house keeping (DOT# 323.687-014), folding machine operator (DOT# 208.685-014), and usher (DOT# 344.677-014). The VE testified that his testimony was consistent with the DOT.

Upon cross-examination, the VE testified that the usher work required being on task all of the time, stated that housekeeping was a task/quota assignment, and explained that folding machine operator just needed the worker to finish the worker's job from beginning to end each day. The VE then indicated that an unscheduled break every hour would eliminate all work.

### STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial

evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful

review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet

or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

### ANALYSIS

Plaintiff seeks remand based on three arguments: the ALJ failed to properly weigh and consider all of the evidence of record, resulting in an erroneous RFC determination; (2) the ALJ made an erroneous credibility finding; and (3) the ALJ's step five finding is erroneous. The Commissioner responds that the ALJ's decision finding Plaintiff not disabled because he can perform a highly-limited range of light work is supported by substantial evidence of record and a well reasoned decision. The Court considers each proposed basis for remand in turn.

## A. Credibility

In making a disability determination, Social Security Regulations provide that the Commissioner must consider a claimant's statements about his symptoms, such as pain, and how the claimant's symptoms affect his daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a); 416.929(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. *See id.* In determining whether statements of pain contribute to a finding of disability, the Regulations set forth a two-part test: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the alleged symptoms; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. *Id.*

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)     The individual's daily activities;
(2)     Location, duration, frequency, and intensity of pain or other symptoms;
(3)     Precipitating and aggravating factors;
(4)     Type, dosage, effectiveness, and side effects of any medication;
(5)     Treatment, other than medication, for relief of pain or other symptoms;
(6)     Other measures taken to relieve pain or other symptoms;
(7)     Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). In making a credibility determination, Social Security Ruling 96-7p provides that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions

and how the conditions affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738.

First, Plaintiff criticizes the ALJ for using "a boilerplate statement" as to the credibility of Plaintiff's pain allegations while selectively "cherry picking" from the objective medical evidence. Notably, Plaintiff does not cite any particular statement in the ALJ's discussion that is "boilerplate." Although the Seventh Circuit has held that, without more, boilerplate language may fail to build the logical bridge for the Court to find a sufficient credibility determination, *see Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012), the ALJ in this case thoroughly discussed the objective medical record and the other relevant factors to determine Plaintiff's credibility.

Second, Plaintiff notes that an ALJ is required to give good reasons and explain why some findings are credited while others were not. Plaintiff then generally criticizes the ALJ for disregarding the opinion of the state agency consultative examiner and of the treating physician, which Plaintiff argues are supported by the record, in favor of the non-examining State agency

reviewing opinion. However, Plaintiff does not analyze the weight the ALJ gave to the physician opinions in the context of seeking remand on credibility; rather, this is Plaintiff's main argument under the RFC analysis in the next section of his brief. Like Plaintiff, the Court analyzes the weight afforded the physicians in the context of the RFC in the following section of this Opinion, and notes here that the Court finds that the ALJ did not err in his weighing of the physician opinions of record.

In this same argument, Plaintiff accuses the ALJ of relying on objective evidence alone. This is not the case. The ALJ first considered the medical evidence and then went on to consider the other factors listed in SSR 96-7p, noting inconsistencies in Plaintiff's statements about his condition. First, the ALJ thoroughly summarized Plaintiff's alleged limitations from his status post right hip fracture and hypertension as well as his testimony of his daily activities. AR 41. The ALJ then discussed the medical evidence following the onset date of October 1, 2009, when Plaintiff was involved in the first car accident. The ALJ discussed the x-ray that revealed the fracture and dislocation of the right hip and the medical record showing decreased range of motion in the right knee and hip. The ALJ then cited the February 8, 2010 report of consultative examiner Dr. Emereuwaonu and its findings that Plaintiff had tenderness and a limping gate in his right leg but also had a normal neurological exam. The ALJ noted Dr. Emereuwaonu's reports that Plaintiff had difficulty getting on and off the exam table and that he was unable to tandem walk, walk on heels and toes, or squat or hop during the examination. The ALJ also noted Dr. Emereuwaonu's report that Plaintiff had abnormal fine manipulation with his right hand, including difficulty zipping, buttoning, and picking up coins. The ALJ then noted the more recent x-ray from May 2010 that revealed fixation of the femoral head by two screws with no acute changes and the healed right hip

fracture. Finally, the ALJ noted that Plaintiff informed Dr. Gandhi on September 7, 2010, that his right hip pops out of the socket.

Next, the ALJ discussed the medical evidence following the second car accident in February 2011. He noted Plaintiff's reports to the emergency room physician of moderate symptoms that worsened with standing but that he was able to walk with a cane. The ALJ noted that the medical records show that Plaintiff had radiating low back and neck pain after his second accident but that his neurological exam was normal. The ALJ noted the lack of any x-ray evidence of fracture or dislocation. Other medical records noted by the ALJ include the February 4, 2011 examination revealing that Plaintiff could not perform a straight leg raising test but that the symmetry of his lower extremities was normal and the March 11, 2011 examining physician notes that Plaintiff's sensations were getting better.

The ALJ then considered and discussed the factors set out in SSR 96-7p, including that he had been laid off from work in 2009 and that he received unemployment benefits through December 2009, which the ALJ believed "cast doubt" on Plaintiff's credibility and suggests greater overall functioning, and that Plaintiff did not seek low cost medical treatment, which, the ALJ reasoned, suggests that the symptoms may not have been as serious as alleged. The ALJ then thoroughly discussed Plaintiff's daily activities in the context of the medical evidence, concluding that Plaintiff has a residual functional capacity to perform less than the full range of light work. The ALJ pointed out inconsistencies, such as "[t]hough the claimant reported on one occasion that his [hip] popped out of place, the medical record fails to show this was an ongoing or consistent problem." AR 41. Or, the ALJ noted that the essentially normal examination by Dr. Emereuwaonu "does not provide strong support for the claimant's allegations that he spends most day[s] sitting in a reclining chair."

*Id.* As another example, the ALJ noted that Plaintiff "testified that he has limited strength and grip in his right hand and he cannot use his pinky finger since his shooting accident in 2005, but the earnings records show that the claimant was able to work with this conditions until May 2009." *Id.* Plaintiff does not take issue with any of this analysis. Thus, the Court finds that the ALJ "connected this conclusion to the record evidence in a detailed analysis, belying any claim that [he] failed to build a logical bridge between the evidence and her conclusion." *Shideler*, 688 F.3d at 312 (citing *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("Despite the inherent difficulty of evaluating testimony about pain, an administrative law judge will often have solid grounds for disbelieving a claimant who testifies that she has continuous, agonizing pain.")).

In another statement in his brief, Plaintiff recognizes that the ALJ had a duty to develop the record and seek information about the severity of pain and its effects on Plaintiff, but does not identify any deficiencies with the ALJ's analysis of Plaintiff's pain, other than to make the conclusory remark: "which he did not do herein." Pl. Br., p. 9.

Third, Plaintiff argues that the ALJ erred by considering Plaintiff's receipt of unemployment benefits and Plaintiff's failure to seek more treatment at free clinics as undermining his credibility, which the Court noted above. "It is not inappropriate to consider a claimant's unemployment income in a credibility determination." *Miocic v. Astrue*, 890 F. Supp. 2d 1046, 1059 (N.D. Ill. 2012) (citing *Schmidt*, 395 F.3d at 745-46). In *Schmidt*, the Seventh Circuit Court of Appeals explains:

> [W]hile we have previously held that "employment is not proof positive of ability to work," *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998), we are not convinced that a Social Security claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work should play absolutely *no* role in assessing his subjective complaints of disability.

395 F.3d at 746.[1] Thus, it was proper for the ALJ to consider Plaintiff's receipt of unemployment benefits as one among many factors in assessing credibility. However, the record shows that Plaintiff began to receive the unemployment benefits prior to his onset date, the date of the car accident. Thus, his receipt of unemployment benefits offers less support for a negative credibility determination; but the ALJ does note that he continued to receive the benefits for several months after his onset date. Importantly, the ALJ did not rely solely on Plaintiff's receipt of unemployment compensation; it was one of many factors.

The ALJ also properly considered Plaintiff's failure to seek treatment at a free or low cost clinic as undermining his credibility. The Plaintiff argues that the ALJ does not state *what* treatment is missing. This is correct, the ALJ does not suggest that *any* treatment is missing. He thoroughly questioned Plaintiff at the hearing as to why he did not seek free or low cost treatment given his complaints of disabling pain and then made the commonsensical observation that Plaintiff's statement that he could not afford proper treatment due to a lack of insurance was undermined by his acknowledgment that he had not attempted to look into subsidized or free care: "This suggests that the symptoms may not have been as serious as alleged in connection with the application and appeal." AR 41. Plaintiff does not dispute this reasoning.

Finally, Plaintiff argues that the ALJ failed to properly consider his complaints of pain on two bases. First, Plaintiff contends, without analysis, that the ALJ disregarded Plaintiff's prescription for "Vicodin, a narcotic, which is indicative of severe pain," and that the ALJ failed to "properly consider Plaintiff's credible pain and medication side-effects" in violation of SSR 96-7p.

---

[1] Plaintiff fails to cite the Seventh Circuit decision in *Schmidt*, citing instead a district court case from 2003 and an unpublished Seventh Circuit decision from 1992, which is in violation of Seventh Circuit Rule 32.1.

AR 11.  However, Plaintiff does not cite any evidence of record that his ability to work is impacted by the side effects of medication.

Second, Plaintiff contends, in one sentence, that the ALJ disregarded Plaintiff's "medically needed cane (assistive device) when walking in a work place, which would preclude light work as he cannot use a cane and lift weight with or use both hands, which is commonly needed for light work."  AR 11.  Plaintiff does not renew this argument in his reply brief.  Although there is some evidence in the record that Plaintiff uses a cane, his own hearing testimony regarding the actual use of the cane belies his assertion that it would interfere with the requirements of the restricted range of light work because he indicated that he uses it for walking longer distances:

> Q.    How long have you had the cane?
> A.    I had the cane since '09.
> Q.    That's the first accident?
> A.    But I was [weaning] myself off of it. I was actually starting to walk without the cane.  The pain used to be probably like at three, four before the last accident, but now with the last accident I actually need the cane even more now.
> Q.    So did you ever stop using the cane though?
> A.    Periodically. I mean used to can[sic] walk further without the cane, but if the distance came like so grave I'll have to use the cane so I wouldn't be in pain. I can do more stuff without the cane.

AR 64.  *See Shideler*, 688 F.3d at 309 (noting that the claimant stated at the hearing that he had broken at least 55 bones over the course of his life but discrediting his testimony because the records and other treatment notes showed that he had only had four surgeries and had not visited any doctors for over five years).

Plaintiff cites *Carradine v. Barnhart*, in which the Seventh Circuit Court of Appeals found remand necessary because the ALJ "based his credibility determination on serious errors in reasoning rather than merely the demeanor of the witness."  360 F.3d 751, 754 (7th Cir. 2004).

Other than generally citing this principle from *Carradine* and identifying the issues discussed above, Plaintiff has not identified any "serious errors in reasoning" as to the evaluation of Plaintiff's pain that would warrant remand. Plaintiff is correct that a review of the medical records supports his assertions of on-going pain, but Plaintiff does not point to evidence to support the great level of limitation he contends flows from that pain or to evidence that undermines the ALJ's assessment of his credibility.

Based on the foregoing, the Court finds that the ALJ's credibility determination was not patently wrong and will not be overturned.

### B. Residual Functional Capacity

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p at *5. In addition, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim." *Id*.

In this case, the ALJ assigned Plaintiff an RFC for a limited range of light work, finding that Plaintiff can never climb ladders, ropes, or scaffolds or work at unprotected heights, can occasionally climb ramps and stairs, stoop, balance, kneel, crouch, and crawl, and is limited to using his right hand for occasional fine finger manipulation and frequent gross manipulation with no manipulative limitations on the left hand. Plaintiff raises two challenges to the RFC finding, arguing that the ALJ improperly weighed the medical opinion evidence and that the ALJ failed to consider Plaintiff's impairments in combination.

First, Plaintiff raises issues with the weight the ALJ gave the treating, examining, and reviewing physicians. An ALJ must give the medical opinion of a treating doctor controlling weight as long as the

> treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record . . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons . . . for the weight we give to your treating source's opinion.

20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); *see also Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); SSR 96-8p; SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996). In other words, the ALJ must give a treating physician's opinion controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record." *Schaaf*, 602 F.3d at 875.

The referenced factors listed in paragraphs (d)(2)(i) through (d)(6) are the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment

relationship, supportability, consistency, specialization, and other factors such as the familiarity of a medical source with the case. 20 C.F.R. §§ 404.1527(d), 416.927(d). "[I]f the treating source's opinion passes muster under § 404.1527(d)(2), then there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it." *Punzio v. Astrue*, 630 F.3d 704, 713 (7th Cir. 2011) (internal quotation marks omitted) (quoting *Hofslien*, 439 F.3d at 376). Courts have acknowledged that a treating physician is likely to develop a rapport with his or her patient and may be more likely to assist that patient in obtaining benefits. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). An ALJ is entitled to discount the medical opinion of a treating physician if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as the ALJ gives a good reason. *Schaaf*, 602 F.3d at 875; *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).

Plaintiff argues that the ALJ improperly rejected Dr. Gandhi's treating opinion in favor of the state agency opinion of record, which Plaintiff asserts provided "absolutely no explanation for its findings." Dr. Gandhi completed two RFC forms, one in May 2010, and one in February 2011; both forms indicated limitations that would preclude work. The ALJ discussed both of Dr. Gandhi's assessments and rejected both on the basis that they are not well supported or consistent with the evidence, finding that the medical evidence shows that Plaintiff has a residual functional capacity to perform less than the full range of light work. The ALJ explained that Dr. Gandhi's opinions were conclusory and that Dr. Gandhi did not provide any explanation of the evidence relied on in forming his opinion. The ALJ also explains that Dr. Gandhi had only a sporadic treatment history with Plaintiff, seeing him only in October and November 2009, then in May and September 2010, and again in January and February 2011.

The ALJ also discounted Dr. Gandhi's opinion because he is not a specialist. Plaintiff argues that Dr. Gandhi has the same speciality as the state agency physicians and that the ALJ's use of this factor is unfair. However, the ALJ noted that Dr. Gandhi is not a specialist in the context of reasoning that Dr. Gandhi did not refer Plaintiff to a specialist and that the course of treatment was conservative, consisting primarily of providing medication and completing the disability report.

The ALJ went on to find that Dr. Gandhi's "opinions are vague, imprecise and his opinions are not consistent with the other medical records and diagnostic tests." AR 42. The ALJ also noted that Dr. Gandhi filled out the disability paperwork in May 2010 without conducting a physical exam, having last seen Plaintiff in November 2009, which was within two months after his first car accident in which he fractured and dislocated his hip. The ALJ properly determined that this rendered Dr. Gandhi's opinion less persuasive. The ALJ concluded that Dr. Gandhi's assessments appear to be sympathetic. The ALJ further analyzed the medical evidence and diagnostic tests from that and found that they show that Plaintiff had full range of motion and strength in his upper extremities, no muscle atrophy, and a healed right hip fracture.

Plaintiff also contends that the state agency opinion did not identify any findings as the basis of the opinion. This is incorrect. The reviewing physician, Dr. Brill, outlined the evidence he considered and reviewed, including the examination findings of Dr. Emereuwaonu, as set out in the medical background above. *See* AR 396.

Plaintiff argues that the ALJ erred by criticizing Dr. Gandhi's opinion as being unsupported by objective evidence, playing doctor by stating that other findings are required, and offering his own lay opinions on Plaintiff's condition, but Plaintiff does not identify any such language in the ALJ's decision or specific analysis to discredit the ALJ's analysis. Plaintiff's reply brief on the

issue of the RFC analysis offers no specific analysis of this case, citing several legal principles with no examples of how the ALJ in this case may have violated the identified principles.

Plaintiff contends that the ALJ ignores the findings of the Agency's own consultative examiner, Dr. Emereuwaonu, which are consistent with the opinions of Dr. Gandhi, making his opinion entitled to even more weight. Specifically, Dr. Emereuwaonu observed Plaintiff limping and requiring an assistive device and observed that Plaintiff was unable to perform many walking and standing functions, including the ability to squat or stoop. The ALJ specifically discusses all of Dr. Emereuwaonu's favorable findings, *see* AR 41, but noted that his examination findings were essentially normal, including normal strength in all muscle groups and no atrophy.

Plaintiff again argues that the ALJ did not state why the cane or other limitations were not included. However, the ALJ is not required to discuss every piece of evidence in the record, the ALJ did not ignore an entire line of evidence contrary to his ruling, and, as discussed above, Plaintiff's own testimony on the cane demonstrates that remand is not required on that issue. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) ("Although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling.") (internal citations omitted).

Plaintiff makes additional unavailing arguments. Plaintiff suggests, without any evidentiary or legal support, that Dr. Emereuwaonu's notation that Plaintiff had severe difficulty getting on and off the examination table was consistent with difficulty with a sit/stand work option. Plaintiff also notes Dr. Emereuwaonu's findings regarding Plaintiff's right hand limitations, contending that the ALJ did not include any manipulative limitations in the RFC. This is simply not true. The ALJ included a limitation to using the right hand for occasional fine finger manipulation and frequent

gross manipulation with no manipulative limitations on the left hand. Finally, Plaintiff generally contends in one sentence, without analysis, that the ALJ erred in adopting the unsupported and incomplete State agency non-examiner's checkbox form under SSR 96-6p, suggesting that the ALJ rejected an examining physician's opinion based solely on the contradictory opinion of a non-examining physician. Pl. Br., p. 15 (citing *Gudgel*, 345 F.3d at 470). Again, Plaintiff mischaracterizes the record. As set forth in detail above, the weight given to Plaintiff's treating physician, Dr. Gandhi, and to the examining consultative physician, Dr. Emereuwaonu, was not based solely on the opinion of the reviewing physician, but rather based on a thorough analysis of the medical evidence and Plaintiff's testimony.

Plaintiff's second objection to the ALJ's RFC analysis is that the ALJ did not consider Plaintiff's non-severe impairments in combination, as required by 20 C.F.R. § 404.1523. "[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (citing *Golembiewski*, 322 F.3d at 918; 20 C.F.R. § 404.1523); *see* 20 C.F.R. §§ 404.1523, 416.923. Once again, Plaintiff cites only this standard and a general allegation that "the ALJ fails to understand Plaintiff's complex and combined limitations" with no analysis or identification of what those complex and combined limitations are or how the ALJ erred in considering his severe impairment of status post-hip fracture and his non-severe impairments of hypertension and right hand post-status gunshot wound. Plaintiff makes no argument anywhere in his brief that his hypertension causes any limitations, and as noted previously, the ALJ accounted for Plaintiff's limited use of his right hand. As in *Getch*, the ALJ in this case considered the combined effect of Plaintiff's non-severe impairments, finding that Plaintiff "has no impairments, or combination of impairments, that meet

or medically equal the requirements of any listing." AR 28. *See Getch*, 539 F.3d at 483 ("Nonetheless, the ALJ in fact did consider Mr. Getch's health problems in the aggregate, ruling that his impairments were not severe enough, "either singly or in combination," to equal one of the listed impairments.").

The Court finds that the ALJ's RFC determination considered Plaintiff's limitations on a function-by-function basis, considered all of the relevant evidence of Plaintiff's ability to do work-related activities, and is supported by substantial evidence. Remand on this issue is not warranted.

## C. Step Five

At Step 5 of the evaluation process, the ALJ found that Plaintiff could perform light work with the additional restrictions of his RFC in jobs of housekeeping (1,000), folding machine operator (450), and usher lobby attendant (750). In so finding, the ALJ relied on the testimony of the VE. The Commissioner has the burden of proof at Step 5 to establish the existence of jobs that are within Plaintiff's RFC. *See Kasarsky v. Barnahrt*, 335 F.3d 539, 543 (7th Cir. 2003).

First, Plaintiff argues that all work would be precluded if the ALJ had properly accounted for Plaintiff's combination of impairments, manipulative limitations, and medication in the RFC. The Court addressed these arguments in the prior section, finding the ALJ's RFC determination proper. Plaintiff then argues that, because the housekeeping position requires varying postures and requires the use of both hands, it is unclear how someone who walks with a cane could perform this work. As set forth in the prior section, the record of evidence does not support the use of a cane to the extent suggested by Plaintiff in this appeal. Accordingly, the ALJ did not err in finding Plaintiff not disabled at step five of the sequential analysis.

## CONCLUSION

Based on the foregoing and because there is substantial evidence in support of the decision to deny benefits, the Court hereby **DENIES** Plaintiff's Opening Brief in Support of Reversing or Remanding the Decision of the Commissioner [DE 24] and **AFFIRMS** the Commissioner of Social Security's final decision.

So ORDERED this 29th day of March, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record